## In re A & B OIL CO.

## OIL WELL SUPPLY CO. v. ERICKSON.
### No. 8704.

Circuit Court of Appeals, Ninth Circuit.
April 9, 1938.

Joseph J. Rifkind, of Los Angeles, Cal., for appellant.

Grainger & Hunt, of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal in bankruptcy proceedings from an order disallowing appellant Oil Well Supply Company's secured claim against the bankrupt A & B Oil Company in the amount of $1,970.35. The sole question before us is whether a chattel mortgage upon which the appellant's claim is based was properly recorded under the laws of California.

The facts are not in dispute. The bankrupt is a corporation organized under the laws of California to carry on oil well operations. Its articles of incorporation designated the county of Los Angeles as the location of its principal office for the transaction of its business, pursuant to section 290, subdivision 3, of the California Civil Code.[1]

The bankrupt's main office was situated in the city of Los Angeles. It had there its books and records. It carried on its banking there. Receipts from its operations were sent to its Los Angeles office and disbursements made from there.

All other operations of the bankrupt and all its real and personal property other than what was required to carry on the described business in Los Angeles was situated in Santa Barbara county. This property consisted of two oil and gas leases, the wells drilled thereon and the necessary drilling and operating equipment.

In September of 1934, the bankrupt purchased from the appellant here a quantity

---

[1] This section requires the articles of incorporation to state "the county in this state where the principal office for the transaction of the business of the corporation is to be located."

of casing material, giving in return its promissory note and a chattel mortgage on the property sold. The mortgage was recorded in Santa Barbara county and not elsewhere in the state.

At the time of this transaction section 2957 of the California Civil Code provided that mortgages of personal property are void as against creditors unless recorded in like manner as grants of real property.

Section 2959 provided: "A mortgage of personal property must be recorded in the office of the county recorder of the county in which the mortgagor resides, if the mortgagor be a resident of this state, and it shall also be recorded in the county in which the property mortgaged is situated."

When the A & B Oil Company went into bankruptcy, there remained due on the secured note a balance of $1970.35, which is the amount of the secured claim filed in these proceedings.

It was disallowed by the trustee on the ground that the mortgage was not recorded in Los Angeles county, as well as in Santa Barbara. The referee and the District Court upheld this contention.

 We think the holding is clearly correct. Where the mortgagor is a corporation, its residence, for purposes of chattel mortgage recordation, is the county where the principal office for the transaction of its business is located.

Appellant contends that the corporation's residence is the county where it carries on the principal part of its operations. It argues that the "principal office for the transaction of the business" required by the statute to be designated by the articles of incorporation is something distinct from the "principal place of business" and that the principal place of business is the county where the greater portion of corporate activities is carried on. It then argues that the "principal place of business" as distinguished from the statutory "principal office for the transaction of the business" is the residence of the corporation for the purposes of chattel mortgage recordation.

It was long settled in California that a domestic corporation's residence is the county designated in its articles. We do not find that the courts of California have ever looked with favor upon a distinction between "principal place of business" and "principal office for the transaction of business."

In 1865 the California corporation law required the articles of incorporation to designate "the principal place of business." In Harris v. McGregor, 29 Cal. 124, 128, in considering this provision, the court said: "But the 'operations' of a corporation may be carried on in one county and their principal place of business, within the meaning of the statute, be in another and distant county. * * * The 'principal place of business' contemplated and intended by the statute is the principal office of the corporation at which the books of the corporation are kept and its officers usually and ordinarily meet for the purpose of managing the affairs and transacting the business of the corporation."

And in Creditors v. Consumer's Lumber Co., 98 Cal. 318, 319, 33 P. 196, 197, the court said: "The principal place of business of a corporation, as stated in its articles, is its residence; but, as in the case of an individual, its actual place of business, its scene of operations, the place where it buys and sells, may be a county entirely different from its place of residence."

To the same effect are Gallup v. Sacramento & San Joaquin Drainage District, 171 Cal. 71, 74, 151 P. 1142, and Cook v. W. S. Ray Manufacturing Co., 159 Cal. 694, 698, 115 P. 318.

We have neither reason nor authority for holding that this settled law to the effect that a corporation's residence is as stated in its articles has been changed by the amendment, Civ.Code Cal. § 290, subd. 3, which requires the articles to indicate the county "where the principal office for the transaction of the business of the corporation is to be located."

We do not conceive that this slight amendment of the wording has the effect of shifting a corporation's residence from its principal office to the scene of its major operations. So to hold would make the protection afforded by the recordation of chattel mortgages a vain thing and a laughing stock in the case of a corporation carrying on industrial operations in more than one county. A prospective mortgagee would be required first to record the mortgage in the county where the property was situated and would then have to determine the corporation's residence by a careful survey and determination of which of California's more than fifty counties housed the largest proportion of his debtor's activities.

Affirmed.